**RAILROAD SALVAGE OF CONN.,
INC., Plaintiff,**

v.

**JAPAN FREIGHT CONSOLIDATORS
(U.S.A.) INC., Venus Communications,
Ltd. and Y. Mori, Defendants.**

**No. 80 CIV 3089.**

United States District Court,
E.D. New York.

Jan. 27, 1983.

See also, D.C., 97 F.R.D. 37.

Bell, Kalnick, Beckman, Klee & Green, Allen Green and James Schwartz, New York City, of counsel, for plaintiff.

Schoeman, Marsh, Updike & Welt, Charles B. Updike and Elizabeth Hellman Cooper, New York City, of counsel, for defendant Japan Air Freight Consolidators (U.S.A.)

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff, Railroad Salvage of Conn., Inc. ("Railroad Salvage"), has moved before tri-

al, for an order declaring that the Warsaw Convention ("the Convention"), 49 Stat. 3000, 49 U.S.C. § 1502 note (1976), does not apply to this action for conversion, negligence and breach of contract. More particularly, Railroad Salvage contends that defendant Japan Freight Consolidators (U.S.A.) ("JFC") may not avail itself of the Convention's limitations on liability, as delineated in Article 22(2) of the Convention. For the reasons stated below, the motion is granted, and the Convention will not apply to this action.

## FACTS

Railroad Salvage authorized a licensed importer, Venus Communications, Ltd. ("Venus"), to procure a quantity of cordless telephones. Venus subsequently purchased three hundred telephones in Tokyo from Mike Trading Corporation ("Mike"), a Japanese company. Mike, in turn, arranged shipment to New York through Japan Freight Consolidators of Japan ("JFC Japan"), a freight forwarder, which consolidates small quantities of goods into bulk form in order to render such shipments economically feasible.

Because the goods were transported in two shipments, JFC Japan issued a separate air waybill for each. The first waybill (JFC–II–332255), dated December 11, 1978, covered one hundred of the telephones; the second bill (JFC–II–332274), dated the following day, covered the other two hundred telephones. Except for the differences in the number of phones and corresponding freight rates, the terms of the two bills were identical.

Both bills named the Hartford National Bank and Trust Company ("the Bank") as consignee, Mike as shipper, and Railroad Salvage as an "also notify" party. Both bills stated that carriage was subject to the terms of the Warsaw Convention. In addition, the letters "N.V.D." (indicating "no value declared") appeared on both bills in the space reserved for declaration of value for purposes of carriage.[1]

The goods were transported by Flying Tiger Airlines (not a party to this action) and were received at John F. Kennedy International Airport by defendant JFC, a break bulk agent for JFC Japan, whose task it was to break up the bulk shipment and distribute its component parcels to the proper parties.

Payment had been arranged by letter of credit issued by the Bank which, as previously noted, was listed as consignee on the air waybill. Upon receipt of the shipping documents, JFC telephoned the Bank and was given permission to release the goods. After clearing Customs, the goods shipped under air waybill number 332274 were taken to JFC's temporary storage facility, while the goods shipped under bill number 332255 remained at Flying Tiger's freight dock.

JFC asserts that, in addition to telephoning the Bank, it notified only Venus, the buyer, of the arrival of the goods and that Venus stated that its trucker, Caputo Trucking, would call for the goods. Railroad Salvage, on the other hand, insists that JFC notified it of the arrival and that it instructed JFC to hold the goods until further notice.[2]

At any rate, it is undisputed that JFC released all the goods to Caputo Trucking and that the goods mysteriously vanished.

---

**1.** The legal significance of a shipper's failure to declare the value of goods for purposes of carriage becomes apparent upon reading Article 22(2) which provides:

In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case, the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that the sum is greater than the actual value to the consignor at delivery.

**2.** Although this factual dispute may be material to the issue of whether JFC actually misdelivered the goods, it is immaterial to a determination of whether, assuming a misdelivery, JFC may resort to the Warsaw Convention to limit its resultant liability.

## ISSUES

Railroad Salvage makes two arguments to demonstrate that JFC may not invoke the Warsaw Convention to limit its potential liability for the lost goods. First, Railroad Salvage alleges that JFC is not a "carrier" within the meaning of Article 18(1) of the Convention. Second, Railroad Salvage claims that the goods were lost subsequent to the termination of "transportation by air" as defined by Article 18(2).

JFC counters that its principal, JFC Japan, is a "carrier" within the meaning of Article 18(1)[3] and even if it is not, the stipulation of Warsaw Convention Liability on the face of the air waybills would still be binding upon Railroad Salvage. JFC conceded during oral argument, however, that the Convention would not limit its potential liability if it were found that "transportation by air" had terminated prior to the loss of the goods.

## DISCUSSION

I am persuaded that "travel by air" terminated no later than when JFC surrendered the goods to Caputo Trucking. Accordingly, I hold that the Warsaw Convention does not apply to this case.[4]

## "TRANSPORTATION BY AIR"

Article 18 of the Warsaw Convention provides in pertinent part:

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft . . . .

.      .      .      .      .

Thus, JFC could limit its potential liability only if it could show that the goods, when lost, were still "in charge of the carrier [JFC] . . . in an airport . . . ."

To that end, JFC cites *Wing Hang Bank, Ltd. v. Japan Air Freight Lines Co., Ltd.,* 357 F.Supp. 94 (S.D.N.Y.1973), where robbers broke into an airline's cargo storage area and stole a parcel containing $250,000 after the parcel had cleared customs and had been returned to the airline's cargo area to await pick up by the consignee. In *Wing Hang Bank,* the parties conceded that defendant's potential liability was limited by the Warsaw Convention. *Id.* at 96.

Similarly, as JFC points out, the court in *Eve Boutique Imports, Inc. v. Seaboard World Airlines, Inc.,* 10 Avi. 17, 703 (Sup.Ct. N.Y.County 1968), applied the Warsaw Convention where plaintiff's goods, after arriving from Switzerland, were placed in defendant airline's warehouse at John F. Kennedy Airport and were subsequently stolen by employees of the airline.

These cases, of course, are inapposite here because the goods were not lost or stolen from the defendant's storage facility. The goods simply were not lost "while in charge of the carrier . . . in an airport . . . ." They were lost somewhere between the airport and their scheduled destination, and while they were in the custody of Caputo

**3.** The argument is that if its principal is a "carrier" within the meaning of the Convention then JFC is entitled to the protection of Article 22(2) under an agency theory.

**4.** I need not address the issue of JFC's status as a carrier or the effect of the Warsaw Convention liability notation on the air waybills in holding the Convention inapplicable to the present controversy. I would note in passing, however, that it is doubtful that either JFC or its principal, JFC Japan, could be viewed as a "carrier" within the meaning of Article 18(1).

This reservation is stated advisedly after the Court's examination of cases cited by JFC which have held freight forwarders to be "carriers" for purposes other than limitation of liability under the Warsaw Convention. *See e.g., Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205 (2d Cir.1970); *Railway Express Agency, Inc. v. Civil Aeronautics Bd.,* 345 F.2d 445 (D.C.Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 162, 15 L.Ed.2d 120 (1965); *Zima Corp. v. M.V. Roman Pazinski,* 493 F.Supp. 268 (S.D.N.Y.1980).

Trucking. "Transportation by Air" must terminate at some point. I find that that point was reached when JFC surrendered the goods to Caputo.

SO ORDERED.