JAYCEES PATOU, INC., Plaintiff,

v.

PIER AIR INTERNATIONAL, LTD., James M. Woltmann, J & J Air Container Station, Inc., and Trans World Airlines, Inc., Defendants.

No. 88 CIV. 1732 (SWK).

United States District Court, S.D. New York.

May 26, 1989.

Joseph A. Schubin, Brooklyn, N.Y., for plaintiff.

McCabe & Cozzens, Mineola, N.Y., for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brings this action to recover for alleged damage to goods shipped and handled by defendants. Originally filed in state supreme court, defendant Trans World Airlines, Inc. ("TWA") removed this action as one arising under the Unification of Certain Rules relating to International Transportation by Air (the "Warsaw Convention"), October 12, 1929, 49 Stat. 3000 (1934), *reprinted in* 49 U.S.C.App. § 1502 note, and hence under the Court's federal question jurisdiction, 28 U.S.C. § 1331. Defendant TWA has moved to dismiss the action as time-barred under the Warsaw Convention's two-year limitation for commencing an action. Defendants Pier Air International, Inc. ("Pier Air") and James M. Woltmann ("Woltmann") have separately moved for similar relief. In the alternative, Woltmann moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Plaintiff has responded by arguing that its claim does not arise under the Warsaw Convention, and has cross-moved to remand this action to state court. For the reasons stated herein, defendants' motions for summary judgment are granted.

### BACKGROUND

Plaintiff contracted with Tous Transport Aeriens of Bologne, France ("TTA France") for the shipment and delivery of 27 cartons of woman's apparel. *See* Exhibit A to Defendant Pier Air's Notice of Motion ("Notice of Motion").[1] This contract is evidenced by a House Air Way Bill prepared by TTA France. TTA France arranged for TWA to transport 20 cartons aboard its international flight from Paris, France to New York City's John F. Kenne-

---

1. Pier Air and Woltmann submitted a statement of undisputed material facts as required by Local Rule 3(g) of the General Rules of this Court. None of the other parties did so, and these facts are deemed admitted, except as specifically controverted in plaintiff's affidavits. The Court notes, however, that although a 3(g) statement is required for summary judgment motions, affidavits should also be filed from which the information in the 3(g) statement is drawn.

dy International Airport.[2]  After arrival in New York, the entire shipment was transferred directly to J & J Air Container Station, Inc.'s ("J & J") warehouse for deconsolidation and inspection by United States Customs prior to clearance and authorization for delivery.  According to the Carrier's Certificate, *see* Exhibit B to Notice of Motion, J & J received from TWA, or Pier Air received from J & J, ten of the twenty cartons delivered in an open and crushed condition, though the contents appeared to be intact.[3]

Subsequent to clearance by Customs and deconsolidation, Pier Air picked up the goods at J & J's warehouse and delivered them to plaintiff's premises in Manhattan on July 16, 1985.  According to defendants, Pier Air delivered the goods to Patou pursuant to the Air Way Bill between TTA France and Patou.  A Pier Air "delivery order", for delivery to plaintiff, indicates that Pier Air delivered 20 cartons and 15 were received as damaged.  *See* Exhibit D to Notice of Motion.  Plaintiff argues that this delivery order evidences a separate contract for ground transportation.

Plaintiff sent to TTA France's New York subsidiary ("TTA New York") a "pre-notice" claim on July 25, 1985.  *See* Exhibit E to Notice of Motion.  In February, 1986, counsel for plaintiff wrote to TTA New York claiming that it was responsible for the damage to the cargo and threatened litigation.  *See* Exhibit F to Notice of Motion.  Pier Air claims it never received a formal notice of claim.  Plaintiff filed suit in the civil court of New York City on September 11, 1987 against TTA New York, Pier Air, J & J and Woltmann.  Pier Air and Woltmann were not served, and following a motion by TTA New York, the civil court dismissed the action.  Plaintiff filed in supreme court in early 1988, with TWA substituted in the place of TTA New York, and TWA removed the action to this Court.

## DISCUSSION

As a duly ratified treaty of the United States, the Warsaw Convention has the force of federal law.  *Data General Corp. v. Air Expr. Intl. Co.*, 676 F.Supp. 538, 539 (S.D.N.Y.1988) (citations omitted).  By its own terms, the "Warsaw Convention is applicable in situations involving 'all international transportation of persons, baggage, or goods performed by aircraft for hire.' " *Id.* (citing Article 1(1) of the Warsaw Convention ("Article —"); *see also Recumar Inc. v. KLM Royal Dutch Airlines*, 608 F.Supp. 795, 797 (S.D.N.Y.1985).  The Convention defines international transportation as "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination ... are situated ... within the territories of two High Contracting Parties ..." *Data General, supra*, 676 F.Supp. at 539 (quoting Article 1(2)).  In the present case, the Air Way Bill calls for the transportation of cargo by air between France and the United States; neither side contests that both of these countries are High Contracting Parties.  By the terms of this contract of shipment, the Warsaw Convention would appear to apply.

The Warsaw Convention creates a presumption of liability under certain circumstances for lost or damaged cargo.  Article 18 provides:

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during transportation by air.

(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a

**2.**  The Court notes the unexplained discrepancy between the 27 cartons mentioned in the Air Way Bill and the reference to 20 cartons received in New York.

**3.**  Defendant states that the Carrier's Certificate indicates that J & J received the cartons from TWA, but on its face the certificate appears to indicate that Pier Air picked up twenty cartons from J & J, ten of which were opened and crushed.

landing outside an airport, in any place whatsoever.

(3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject proof to the contrary, to have been the result of any event which took place during the transportation by air.

The central issue now before the Court is whether plaintiff's claim falls within the scope of the Warsaw Convention, and if so, whether plaintiff's filing was timely.

■ Plaintiff argues that this action is not subject to the provisions of the Warsaw Convention because the alleged damage did not occur until after TWA had delivered the goods to J & J, and thus not during any period of transportation by air. Plaintiff explains TWA's presence in the suit, made awkward by this argument, by arguing that plaintiff seeks only to hold TWA liable vicariously for its negligence in failing to secure and safeguard the contents after completion of the flight. TWA did not reply to this argument. Plaintiff claims that the Warsaw Convention only applies to damages sustained before release of goods by a carrier after an international flight. Defendants Pier Air and Woltmann stress that plaintiff was operating under a single air way bill that provided for door-to-door delivery from France to plaintiff's place of business in Manhattan. Since the ground transportation from the airport is included as one of the line items on this air way bill, defendants argue that the contract should be read as a whole.

The Court agrees with defendants' position. First, plaintiff's argument concerning the locus of the damages is without evidentiary support. In a motion for summary judgment, once the moving party has met its burden of demonstrating an absence of genuine issues as to the material facts, the resisting party has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement). Plaintiff's only "proof" is that the Carrier's Certificate indicates that ten cartons were damaged, whereas the Pier Air Delivery Order indicates that 15 damaged cartons were received. While the difference in numbers may indicate that five cartons were damaged in transit from J & J's warehouse to plaintiff's premises, as plaintiff suggests, it may also indicate nothing more than a dispute as to the number of cartons damaged en route to New York or while in storage at the warehouse. This "proof" certainly is not sufficient to overcome the presumption in Article 18 that the damage occurred during the period of air transportation. Moreover, even if some of the damage occurred during ground transportation, plaintiff's argument concedes that most of the damage occurred previously, during the period of presumptive "transportation by air". Since the Court can thus presume that the damages occurred during a period of transportation by air, the provisions of the Warsaw Convention apply.

In a case raising issues similar to those presented here, the Northern District of Illinois stated that, "[f]or presumptive liability purposes, Article 18(3)'s terms expressly embrace an air carrier's contractual undertaking for land delivery within 'transportation by air'—a term of art." *Magnus Electronics, Inc. v. Royal Bank of Canada*, 611 F.Supp. 436, 439 (N.D.Ill.1985). In that case, plaintiff had hired a freight forwarder, which in turn hired an airline, to ship goods to a certain location in Argenti-

na. The goods were to be delivered into the custody of a bank as consignee, which would hold the goods until the buyer actually made payment. By mistake, either the airline or the bank allowed delivery of the goods to the buyer before the buyer paid. The court reasoned that since plaintiff's air waybill contract with the airlines, through the freight forwarder, called for shipment of the goods directly to the bank as consignee of plaintiff, the period of "transportation by air" continued through the delivery of the goods to the bank even though ground transportation effected the last leg of the journey. *id.* The court stated:

> So long as the goods remain in the air carrier's actual or constructive possession pursuant to the terms of the carriage contract, the period of "transportation by air" does not end. If [the airlines] had put the [plaintiff's] shipments on (say) a truck and transported them from the airport in Buenos Aires to another location where [the buyer] took possession, neither [plaintiff] nor [the airlines] would have any basis for claiming that "transportation by air" had ceased.

611 F.Supp. at 440. A similar problem arose in *Railroad Salvage of Conn. v. Japan Freight Consolidators*, 556 F.Supp. 124 (E.D.N.Y.1983), *aff'd mem.*, 779 F.2d 38 (2d Cir.1985), in which the court concluded that transportation by air ended prior to the time plaintiff's trucking company picked up the goods at the airport warehouse, thus ruling that the Warsaw Convention did not apply. In *Railroad Salvage*, the plaintiff authorized an importer to procure a quantity of cordless telephones, and the importer in turn purchased the phones from a Japanese company, which in turn arranged shipment to New York through the defendant Japan Freight Consolidators ("JFC"). JFC prepared air waybills and transported the goods via Flying Tiger Airlines, which was not a party to the action. JFC received the goods at Kennedy International Airport and then contacted a consignee bank, through which payment had been arranged, which gave JFC permission to release the goods. JFC then contacted the actual buyer to notify it of the arrival of the goods, and the buyer responded that its trucker would pick up the goods.[4] The trucking company retrieved the goods and they thereafter disappeared. The court determined that the Warsaw Convention did not apply since any loss occurred after the goods were released to the trucking company, by which point transportation by air had ended. 556 F.Supp. at 126.

The facts of this case are distinguishable, and serve to reinforce the Court's conclusion that the single air waybill in this case serves to extend the presumptive liability period of "transportation by air" through delivery to Patou's premises in Manhattan. In the present case, it was TTA France that arranged for the shipment of goods from France to the airport in New York and from the airport to plaintiff's premises. The entire contract of carriage is evidenced by a single air waybill. Plaintiff contends that the delivery order on Pier Air stationary, on which plaintiff acknowledged receipt of the goods, evidences a separate contract of carriage. The Court disagrees, and believes that no reasonable jury could so conclude. The delivery order evidences nothing more than an order to deliver the goods to Patou. No terms are given and no payment is evidenced; indeed, the only place where a payment would be marked as due, a "C.O.D." blank, was not filled in. By contrast, the Air Way Bill prepared by TTA France includes separate lines, and fees, for air shipment and land transportation. The facts of this case, in light of the cases discussed above, lead the court to conclude that the presumptive period of transportation by air envisioned in Article 18(3) did not end until the goods were delivered to plaintiff's premises. For this reason, the Warsaw Convention applies.[5]

---

**4.** The parties disputed whether or not the buyer had authorized release of the goods to the trucking company, but the court noted that this fact was not material to the question whether the Warsaw Convention applied.

**5.** Even if the Warsaw Convention were not applicable to the claims against defendants generally, it is clear that they would apply as to defendant TWA. TWA transported the goods overseas by air, and any damage attributable to

Article 29 of the Warsaw Convention provides for a two-year statute of limitations commencing "[(1)] from the date of arrival at the destination, or [(2)] from the date on which the aircraft ought to have arrived, or [(3)] from the date on which transportation stopped." In this case, the goods arrived at their destination on July 16, 1985, and a timely action must therefore have been commenced no later than July 16, 1987. Plaintiff did not file this action until February, 1988, past the two-year mark. Even plaintiff's first action in civil court, filed in September, 1987, was untimely. Thus, this action is untimely. Defendants' motions for summary judgment is thus granted and the complaint is dismissed.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are granted and the complaint is dismissed as time-barred. Plaintiff's cross-motion to remand is denied, and the Court does not reach defendant Woltmann's motion to dismiss.

SO ORDERED.

TWA necessarily occurred during "transportation by air". Plaintiff argues that it seeks only vicarious liability for TWA's negligence in failing to care for the goods after the goods were relinquished to J & J. Plaintiff has not presented a theory of recovery under which TWA would be liable under these circumstances, and the Court discerns none. Vicarious liability would be present only if J & J and Pier Air were acting as agents of TWA. If so, however, the terms of the Warsaw Convention would apply. *See Royal Insurance v. Amerford Air Cargo*, 654

F.Supp. 679, 682 (S.D.N.Y.1987) (agents of air carrier covered by terms of Warsaw Convention). If they were not acting as agents, then TWA would not be vicariously liable, and plaintiff would have no claim against TWA. The Court thus concludes that TWA is covered by the Warsaw Convention, and as such, the claim against TWA would be time-barred, *see* discussion, *infra*, even if the other defendants were not similarly covered by the Warsaw Convention.