**714**

**HATZLACHH SUPPLY, INC., Plaintiff,**

v.

**TRADEWINDS AIRWAYS, LTD., Defendant.**

**No. 83 Civ. 7249 (SWK).**

United States District Court, S.D. New York.

May 23, 1990.

Mallow, Konstam, Hager & Fischer, New York City by Abe H. Konstam, for plaintiff.

Condon & Forsyth, New York City by Stephen J. Fearon, for defendant.

1. The Court adopts the discussion of the background of this litigation from its three prior

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action is for the damages suffered by plaintiff Hatzlachh Supply ("Hatzlachh") in an international transaction when the defendant Tradewinds Airways, Ltd. ("Tradewinds" "TAL") purportedly failed to follow instructions on the airway bills. This Court has written three prior opinions in this case, familiarity with which is assumed.[1] Presently before this Court is plaintiff's motion to dismiss defendant's affirmative defenses based on the limitations of the Warsaw Convention ("the Convention") on the ground that the Convention does not apply to the loss in this case.

### Discussion

The Convention is a ratified treaty of the United States that generally limits liability for injury or damage during international air transportation. According to its terms, the "Warsaw Convention is applicable in situations involving 'all international transportation of persons, baggage, or goods performed by aircraft for hire.'" *Data General Corp. v. Air Express Int'l Co.*, 676 F.Supp. 538, 539 (S.D.N.Y.1988) (quoting Article 1(1) of the Convention). International transportation is defined in relevant part as

> any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or transshipment, are situated ... within the territories of two High Contracting Parties....

Article 1(2). In this case, the goods were transported from New York to Kano, Nigeria. Both the place of departure and of destination are parties to the Convention. Affidavit of Stephen J. Fearon ¶ 6.

The Convention applies to damage that "took place during the transportation by air." Article 18(1). Under the Convention, "transportation by air" is a term of art that includes more than mere air transport. Ar-

opinions, dated December 31, 1985, October 31, 1988 and January 23, 1989.

ticle 18 of the Convention defines transportation by air, as follows:

(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.

(3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject proof to the contrary, to have been the result of any event which took place during the transportation by air.

*Jaycees Patou, Inc. v. Pier Air Intern., Ltd,* 714 F.Supp. 81, 82–83 (S.D.N.Y.1989) (quoting Article 18(1)–(3)).

The primary issue presented by plaintiff's motion is whether this loss occurred during the period of "transportation by air." This is not the typical damage to goods case. The goods here were delivered to the buyer and there is no claim that they were damaged. The loss at issue here stems from the buyer's non-payment for the plaintiff's goods received in Nigeria. Plaintiff seeks to hold defendant carrier liable for its negligence or breach of the airway bills, which allegedly require that the carrier should not release the goods until the bank guarantees payment. The two airway bills in question list the Savannah Bank of Nigeria as consignee and further state under the "Handling Information" section that "[t]he bank can release the merchandises to Difson Co. only if Savannah Bank Guarantees Draft ... Payable in 30 Days." Airway bills dated October 1 and 6, 1980, attached as Exhibits A and B to Affidavit of Stephen Fearon. The goods were released, but plaintiff has not received its money.

Plaintiff initially argues that the loss stemmed from defendant's failure to obtain the guaranteed payment at the point it released the goods, not from anything relating to the "transportation by air." Plaintiff contends that the instruction on the airway bill provided a contractual obligation separate and apart from "transportation by air." Plaintiff also argues that the loss occurred only after the defendant released the goods to the buyer, and that "transportation by air" was complete at least by the time defendant released those goods. In opposition, defendant contends that it had no duty to collect any money for the consignments, and that "once the goods were transported and delivered, ... [its] duties were fulfilled and the "transportation by air" completed. Defendants Memorandum at 11. Consequently, defendant claims that it had no duty or obligation beyond the transporting of the cargo, and that any liability arose during "transportation by air."

Plaintiff relies on *Railroad Salvage of Conn. v. Japan Freight Consolidators* for the proposition that "transportation by air" was complete at the time of the defendant's alleged misconduct that resulted in the loss. 556 F.Supp. 124 (E.D.N.Y.1983), *aff'd mem.,* 779 F.2d 38 (2d Cir.1985). At issue in *Railroad Salvage* was whether the allegedly unauthorized release of goods to a trucking company that purported to be the agent of the buyer occurred during the period of transportation by air. The trucking company had apparently converted or lost the goods. On these facts, the *Railroad Salvage* court held that the goods

were lost somewhere between the airport and their scheduled destination, and while they were in the custody of Caputo Trucking. "Transportation by Air" must terminate at some point. I find that that point was reached when JFC [the freight forwarder defendant] surrendered the goods to Caputo.

556 F.Supp. at 126–27.

*Railroad Salvage,* however, is inapposite to this action. As in this case, the goods in *Railroad Salvage* were released and the plaintiff did not receive payment. However, unlike this case, the defendant in *Railroad Salvage* was the freight forward-

er, not the carrier. Moreover, the goods were not released to the bank designated as consignee on the airway bill, but to a trucking company that purportedly acted for the buyer. The *Railroad Salvage* court expressly rested its decision on the finding that the loss did not occur until after the goods left the airport in the custody of Caputo Trucking. In this case, the loss occurred not during transit to the buyer, but when they were released to the buyer, either through the fault of the Savannah Bank or the defendant. Whether or not the plaintiff can prove some wrongful conduct by defendant is an issue for trial, but there is no basis on which to conclude that the loss here stems from breach of an obligation separable from "transportation by air" or that the loss took place after transportation by air was complete.

This conclusion is further supported by *Magnus Electronics, Inc. v. Royal Bank of Canada*, 611 F.Supp. 436, 439 (N.D.Ill. 1985). In *Magnus,* the goods were delivered to the custody of a bank as consignee, which was to hold them until the buyer made payment. Through the fault of either the airline or the bank, the goods were released to the buyer before the buyer made payment. That court held that the period of "transportation by air" continued through the delivery of the goods to the bank because the airway bill contract with the airlines called for shipment of the goods directly to the bank as consignee for the plaintiff. According to the *Magnus* court:

> So long as the goods remain in the air carrier's actual or constructive possession pursuant to the terms of the carriage contract, the period of "transportation by air" does not end.

611 F.Supp. at 440. Here, the airway bill also instructs that the goods are not to be delivered to the consignee bank and not released by the consignee bank until payment is guaranteed. This Court similarly concludes that "transportation by air" did not terminate until the goods left the custody of Tradewinds and were released to the buyer. *See Jaycees Patou, supra,* 714 F.Supp. at 84 (delivery beyond airport, over land, by carrier as contracted for in single airway bill is presumptively included in "transportation by air").

Plaintiff argues in its reply papers that defendant's liability stems from the fact that the freight forwarder, as defendant's agent, included the instruction that the bank not release the goods without a guarantee of payment. Reply Affirmation of Abe Konstam ¶ 2. The defendant responds that the freight forwarder is a middleman who acts as agent for both the shipper and carrier, and that this agency relationship is irrelevant to the issue of whether or not the loss occurred before "transportation by air" was complete. The Court agrees that the issue of agency is irrelevant to whether the Warsaw Convention applies and concludes that these goods were released to the buyer, whether wrongly or not, during the period of "transportation by air." Consequently, the Convention, with its limitations on liability, applies in this case.

Conclusion

For the aforementioned reasons, this Court concludes that the Warsaw Convention governs this action, and therefore, plaintiff's motion to dismiss defendant's affirmative defenses is denied.

SO ORDERED.

