**GENERAL ELECTRIC COMPANY,**
Plaintiff,

v.

**HARPER ROBINSON & CO., Tri–State Motor Co., J.H. Rose Truck Line Co. and Air France, Defendants.**

No. 89 CV 3452(SJ).

United States District Court,
E.D. New York.

April 1, 1993.

Robert Goodman, Tell, Cheser & Breitbart, New York City, for plaintiff.

Eugene F. Massamillo, Biederman, Hoenig, Massamillo & Ruff, New York City, Andrew R. Spector, Hyman & Kaplan, P.A., Miami, FL, for Harper Robinson & Co.

C. Raymond Nelson, Graham & James, New York City, for Air France.

Robert J. Brown, Chalos, English & Brown, P.C., New York City, for Tri State and J.H. Rose Transit.

### MEMORANDUM AND ORDER

JOHNSON, District Judge:

Plaintiff General Electric Company commenced this action against Defendants Air France, Harper Robinson & Co., Tri–State Motor Transit Co., and J.H. Rose Truck Line Co. to recover damages sustained by a jet engine during shipment. Defendant Air France moves for an Order pursuant to Fed. R.Civ.P. 56 granting summary judgment in its favor and dismissing the Complaint and the cross-claims of all co-defendants on the ground that there is no triable issues of fact. Defendant Harper Robinson & Co. also moves for summary judgment dismissing the complaint or in the alternative for partial summary judgment limiting its liability to $50.00.[1] For the reasons stated below, Air France's motion for summary judgment is granted and Harper Robinson's motion for partial summary judgment is granted in part and denied in part.

### I. BACKGROUND

On or about June 21, 1988, Air India issued air waybill No. 09853621772 covering the transportation of one jet engine from Bombay, India to General Electric in Ohio. Air France transported the jet engine from Bombay to John F. Kennedy International Airport ("JFK") in New York. On or about June 24, 1988, the jet engine arrived at JFK where it was to be shipped to Evansdale, Ohio. Defendant Harper Robinson & Co. ("Harper Robinson") prepared the customs documents for the jet engine's clearance through U.S. Customs. The engine cleared U.S. Customs without incident. Harper Robinson also arranged for Defendant Tri–State to transport the engine from JFK to Ohio.

The terms and conditions of the agreement between Harper Robinson and General Electric is set forth two invoices (Nos. 272749736 ADDL and 272749736). The first invoice covered Harper Robinson's services for preparing and filing customs documents for entry. The second invoice covered Harper Robinson's services for arranging inland freight transportation. The terms and conditions of service included that following provision on the reverse side of each invoice:

8. Limitation of $50 Per Shipment. The Customer [General Electric] agrees that the Company [Harper Robinson] shall in no event be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company for any amount in excess of $50 per shipment (or the invoice value, if less) and any partial loss or damage for which

---

1. Harper Robinson had also moved to dismiss the fraud and misrepresentation claims under Rule 9(b). In its opposition papers, General Electric agreed to withdraw those claims.

the Company may be liable shall be adjusted pro rata on the basis of such valuation. The Customer has the option paying a special compensation to increase the liability of the Company in excess of $50 per shipment in case of any loss, damage, expense or delay from causes which would make the Company liable but such option can be exercised only by specific written agreement made with the Company prior to shipment which agreement shall indicate the limit of the Company's liability and the special compensation for the added liability by it to be assumed.

This provision appeared on the back of every invoice submitted by Harper Robinson to General Electric from 1980 onward.

On or about June 29, 1988, Tri–State arrived with a flatbed trailer to pick up the jet engine. The engine was loaded on the flatbed trailer by a fork lift. Plaintiff General Electric alleges that Air France personnel told the Tri–State driver that the engine was not overheight. The driver failed to measure the engine before loading it onto the truck. Tri–State left JFK and proceeded to take the Van Wyck Expressway in route to Ohio. After travelling approximately twenty minutes, the engine struck an overpass causing damage to the engine. The engine struck an overpass a second time when the driver returned the engine to the Air France terminal. Tri–State was transporting the engine pursuant to transportation contract (No. 0904) between General Electric and Tri–State. The contract limited Tri–State's liability to $100,000.

## II. ANALYSIS

### A. Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. ("Rule") 56(c). The court's function is not to resolve disputed genuine issues of material fact, but only to determine whether there is such an issue in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States,* 841 F.2d 469, 473 (2d Cir. 1988). The mere existence of factual issues which are not material to the outcome of the litigation will not defeat a motion for summary judgment. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

### B. Air France's Motion for Summary Judgment

█ General Electric argues that the Warsaw Convention is inapplicable to its negligence claim against Air France because the damage to its engine occurred after Tri–State left the airport with the engine. Article 18 of the Warsaw Convention provides as follows:

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took during the transportation by air.

(2) The transportation by air within the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.

(3) The period of the transportation by air shall not extend to any transportation by land, sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of lading, delivery, or trans-shipment, any damages presumed, subject ᵗo proof of the contrary, to have been the result of an event which took place during the transportation by air.

Section 1 of Article 18 creates a presumption of liability when the damage occurred during the transportation by air period. *Jaycees Patou, Inc. v. Pier Air International, Ltd.,* 714 F.Supp. 81, 82 (S.D.N.Y.1989).

█ The issue presented by this motion is whether the "occurrence which caused the damage" took place during the period of "transportation by air" as defined by Article

18 of the Warsaw Convention. The Second Circuit in *Victoria Sales Corporation v. Emery Air Freight, Inc.,* stated that "[t] the plain language of Article 18 draws the line at the airport's border" and "excludes any transportation by land outside of the airport." 917 F.2d 705, 707 (2d Cir.1990). This is a classic damaged goods case. Air France carried General Electric's jet engine to New York and surrendered it to Tri–State. After departing J.F.K., the Tri–State flatbed trailer travelled along the Van Wyck Expressway until the engine struck an overpass. The damage to the jet engine clearly did not take place within the transportation by air period.[2] The presumption of liability having been successfully rebutted by proof that the damage took place outside the transportation by air period, the Court finds the Warsaw Convention is inapplicable to the negligence claim against Air France. *See Victoria Sales Corporation v. Emery Air Freight, Inc., supra* at 709.

Notwithstanding the inapplicability of the Warsaw Convention to this claim, Air France asserts that it is still entitled to summary judgment because General Electric failed to comply with the notice provision the Air France International Cargo Rule Tariff No. ICR–2. Air France filed this tariff with the United States Department of Transportation. It is well settled that an air carrier's tariffs which have been duly filed with the United States government constitutes the contract of carriage and govern the rights and liabilities between the parties. *See Clemente v. Philippine Airlines,* 614 F.Supp. 1196, 1199 (S.D.N.Y.1985).

Air France International Cargo Rule Tariff No. ICR–2 states:

(B)(1) ... no action shall be maintained in the case of damage to or partial loss of cargo unless a written notice, sufficiently describing the cargo concerned, the approximate amount of the damage, and the details of the claim is presented to an office of the carrier within seven (7) days of the date of receipt thereof. . . . [3]

General Electric does not dispute the fact that it failed to provide Air France with written notice of its claim within the proscribed period. Instead, argues that its notice to Tri–State should be deemed sufficient.

Plaintiff cites *Pan American World Airways, Inc. v. C.F. Airfreight, Inc.,* 1990 WL 240947; 23 Av.Cas. 17,189 (S.D.N.Y.1990) in support of its position. However, this case is distinguishable on its facts. The court in *Pan American World Airways, Inc. v. C.F. Airfreight, Inc., supra,* found that in the age of modern air transportation which often involves the use of many carriers for a single journey, written notice to one carrier is sufficient. The court's decision to treat notice to the trucking company as equivalent to notice to the air freight forwarder turned on the fact that the trucking company was hired by the air freight forwarder and it was in the best position to notify the forwarder of the damage. Here, General Electric, not Air France, contracted with Tri–State. Therefore, notice to Tri–State cannot be deemed sufficient notice to Air France. Absent a material issue of fact, Air France is entitled to summary judgment.

### C. Harper Robinson's Motion for Summary Judgment

Defendant Harper Robinson contends that it is entitled to summary judgment because its contract with General Electric limited its liability to $50.00. Plaintiff argues that the $50.00 limitation on liability contravenes 19 C.F.R. 111.44 which prohibits a customs broker from limiting its liability. The Code of Federal Regulations defines customs broker and customs business as follows:

---

**2.** The parties do not dispute that the damage occurred outside the transportation by air period. Air France conceded the issue when it argued that the damage to the engine did not occur during the air transportation issues in its moving papers.

**3.** General Electric argues that the Air India waybill requires that the "person entitled to delivery must make the complaint to the carrier in writing in the case of visible damage to the goods immediately after discovery of the damages and at the latest within fourteen days from receipt of the goods." This provision conflicts with the Air France tariff which allows seven days for notice. Where the air waybill conflicts with the tariff, the latter prevails. *Denby v. Seaboard World Airlines, Inc.,* 737 F.2d 172, 186 (2d Cir.1984).

(b) Customs Broker. Customs Broker means a person who is licensed under this part to transact Customs business on behalf of others.

(c) Customs Business. Customs business means those activities involving transactions with Customs concerning the entry and admissibility of merchandise, the classifications and valuation, the payment of duties, taxes or other charges assessed or collected by Customs upon merchandise by reason of its importation, or the refund, or rebate or drawback thereof.

19 C.F.R. 111.1.

Here, General Electric's claim against Harper Robinson is not that it committed an error or breach of contract as a customs broker. It is undisputed that Harper Robinson properly filed all entry documents required to secure the release of the engine. All duties and other charges were paid to U.S. Customs. Customs accepted the entry and delivered the release paperwork signed by U.S. customs to Air France. Air France received a copy of Customs Form 3461 which indicated the entry was accepted and the shipment could be released. Rather, General Electric's claim against Harper Robinson arises from its arranging of inland trucking with General's Electric's appointed trucking company. These acts clearly fall outside the range of services that the regulations deem to be custom services. Therefore, the Court finds that Harper Robinson is not barred from limiting its liability under 19 C.F.R. 111.44.

■ Parties may limit liability by terms and conditions like those contained on the Harper Robinson's invoice where there is an established prior course of dealings. In *Calvin Klein Ltd. v. Trylon Trucking Co.*, the Second Circuit upheld a $50.00 limitation of liability where the parties were business entities with an ongoing commercial relationship involving numerous prior transactions. 892 F.2d 191, 195 (2d Cir.1989); *see also Capital Converting Equipment v. LEP Transport, Inc.*, 750 F.Supp. 862 (N.D.Ill.1990), *aff'd* 965 F.2d 391 (7th Cir.1992). The court noted that the plaintiff was aware of the terms and was free to adjust the limitation upon a written declaration of the value but failed to do so. Therefore, the plaintiff was bound by the limitation on liability. *Calvin Klein Ltd. v. Trylon Trucking Co. supra* at 196.

■ Here, it is undisputed that there existed a prior course of dealings between General Electric and Harper Robinson involving over 23,395 transactions. Each invoice contained the same $50.00 limitation on liability. The invoices also gave General Electric the option of paying special increased compensation. Since General Electric failed to exercise that option, the $50.00 limitation on liability is binding and enforceable against claims of ordinary negligence solely.

■ With respect to claims of gross negligence, clauses limiting damages to a nominal sum violate public policy. *Sommer v. Federal Signal Corporation*, 79 N.Y.2d 540, 583 N.Y.S.2d 957, 963, 593 N.E.2d 1365, 1370 (1992). "Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must 'smack[ ] of intentional wrongdoing.' " *Id.* 583 N.Y.S.2d at 963, 593 N.E.2d at 1371 *citing Kalisch–Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385, 461 N.Y.S.2d 746, 448 N.E.2d 413 (1983). On a motion for summary judgment, the Court's only function is to decide whether there is a material factual issue to be tried, not to decide it. While the Court finds little if any evidence supporting a claim for gross negligence, whether Harper Robinson's conduct amounted to gross negligence is a question for the jury to determine.

## III. CONCLUSION

For the reasons set forth above, Air France's motion for summary judgment is hereby granted. Harper Robinson's motion for partial summary judgment limiting its liability to $50.00 is granted with respect to General Robinson's claim for ordinary negligence and denied with respect to General Robinson's claim for gross negligence.

So Ordered.