**I.L.T.A., INC., Plaintiff-Appellant,**

v.

**UNITED AIRLINES, INC., Defendant-Appellee.**

**No. 1341, Docket 84–7200.**

United States Court of Appeals, Second Circuit.

Argued June 4, 1984.

Decided July 13, 1984.

---

MISHLER, District Judge:

This is an action by a charter company to recover damages for breach of contract from a carrier airline. Plaintiff I.L.T.A., Inc. appeals from a judgment of the District Court for the Western District of New York (Michael A. Telesca, J.) granting summary judgment for the defendant United Airlines. The district court held that the airline did not breach its contract with I.L.T.A., Inc. when it applied for special Tariff Permission before the Civil Aeronautics Board and enforced the new tariff granted which required I.L.T.A., Inc. to pay for each charter flight four days prior to the time required by the contract. We agree and affirm the judgment of the district court.

## FACTS

Plaintiff and defendant entered into a contract in August 1978 which provided for 64 round-trip charter flights to be operated during 1979 by defendant United Airlines ("United") for the plaintiff, I.L.T.A., Inc. ("ILTA"), a charter operator offering seats on the flights for resale to the public. Under the contract ILTA was to pay United for each flight seven days before departure. The contract also provided that United's tariffs, including future modifications, govern the rights and liabilities of the parties and supersede the terms of the contract.

On January 23, 1979 United notified ILTA that it had filed a petition that day with the Civil Aeronautics Board ("CAB") to amend its charter tariff to require payment eleven days prior to departure instead of the seven days provided in the contract. United also requested prompt implementation of its proposed change. The explanation given by United for the change was based on a recent CAB regulation which prohibited a tour operator from cancelling a charter tour less than 10 days before departure. United feared that the regula-

Robert C. Lester, P.C., Washington, D.C., for plaintiff-appellant.

Nicholas R. Weiskopf, New York City, for defendant-appellee.

Before OAKES and NEWMAN, Circuit Judges, and MISHLER, District Judge.*

* Honorable Jacob Mishler, United States District Judge, Eastern District of New York, sitting by designation.

tion would prohibit the airline from cancelling flights for which it had not been paid.

On January 29, 1979, the CAB granted United's request to file its amended tariff without the normally required 60-day notice. *See* 49 U.S.C. § 1373(c)(2); 14 C.F.R. § 221.190 (1984). United filed the new tariff on February 14, 1979. On February 12, 1979 ILTA informed United that it would either continue to pay seven days prior to departure or it would be willing to renegotiate the contract provisions, but would not pay eleven days in advance. United began to cancel flights not paid for eleven days before departure and then reinstated them when payment was made. On March 26, 1979 ILTA notified United that it would no longer remit payment for flights because it took the position that United's *ex parte* petition to modify the tariff rendered the contract null and void. United treated this response as a notification of cancellation and applied the certificate of deposit given as security to the extent of its loss, as provided in the contract. United collected $48,625.91 plus interest.

ILTA filed this action in the District Court for the Western District of New York. On cross motions for partial summary judgment, the court found for United and granted summary judgment on the first, second, third and fourth causes of action. Plaintiff moved for entry of final judgment on these claims pursuant to Fed. R.Civ.P. 54(b). The motion was granted. Plaintiff now appeals the grant of partial summary judgment.

## DISCUSSION

The appeal presents two issues for review by this court. First, whether the district court's direction to enter final judgment on "fewer than all of the claims" was proper under Fed.R.Civ.P. 54(b). Second, whether the subsequent reversal by the CAB of its earlier grant of Special Tariff Permission to United on the grounds that the petition had been improperly granted, rendered United's enforcement of the tariff in the interim an anticipatory breach of the contract.

■ Turning to the first issue, the Supreme Court has outlined the proper procedure for the application of Fed.R.Civ.P. 54(b). *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). That rule provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

First the district court must find that its judgment is final in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). After determining finality, the district court must determine whether there is any just reason for delaying the entry of final judgment. The district judge must consider such factors as judicial administration and economy, "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once ...." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. at 8, 100 S.Ct. at 1465.

The district court in the instant action specifically found that its grant of defendant's motion for summary judgment on the plaintiff's first four causes of action was a final disposition of those claims. It also stated that "having considered the relationship of these causes to the remaining causes and the circumstances of this case [the court] hereby expressly determines that there is no just reason for delay in the entry of judgment and in permitting an immediate appeal on the unusual legal issue posed ...; that delay in the entry of judgment may prejudice plaintiff's trial of

causes ninth and tenth; and that permitting an immediate appeal may serve ultimately to confine discovery, shorten any resulting trial and expedite the work of this court..."

The first four causes of action in plaintiff's complaint arise from United's application for the Special Tariff Permission which was later reversed by the CAB. The first cause of action alleges breach of a contract, the second alleges negligence in United's attempt to collect payment in violation of the contract, the third alleges damages due to United's refusal to release a $200,-000 certificate of deposit provided by ILTA as security for the contract, and the fourth alleges wrongful conversion by United of $48,000 from the certificate of deposit purportedly representing cancellation fees and penalties incurred by United.

█ These four causes of action all derive from the events surrounding United's tariff petition and the actions of the parties in response to the CAB's grant of the tariff change. They are separate and distinct from the remaining causes of action.[1] The bases of the remaining claims and the recovery sought are sufficiently separable from those dismissed for proper certification under Fed.R.Civ.P. 54(b). Agreeing that there was no just reason for delay, we find that the direction of entry of partial summary judgment' was correct and we therefore proceed to the merits of this appeal.

The CAB regulations permit a carrier to file for Special Tariff Permission to amend a tariff on less than the 60 day notice required by statute. 49 U.S.C. § 1373(c)(2). Subpart P of the CAB regulations, 14 C.F.R. § 221.190(a) states: "The Board is authorized, when actual emergency or real merit is shown, to permit changes in rates, fares, or other tariff provisions on less than the statutory notice...." United, pursuant to this provision, sought to amend its tariff to require payment for charter flights eleven days before departure instead of seven days as required by the contract. The request for prompt implementation was approved by the Chief, Tariffs Division Bureau of Pricing and Domestic Aviation on January 31, 1979. The amended tariff was filed by United on February 15, 1979 and went into effect on March 1, 1979.

ILTA contends that United purposely brought the petition *ex parte* and filed the tariff less than two weeks prior to its effective date in order to prevent ILTA from challenging the new tariff before it became effective.[2] In this way, United was able to unilaterally alter the charter contract and compel ILTA to comply with the new tariff during the pendency of its challenge to the tariff before the CAB. ILTA claims that it challenged the amended tariff as soon as possible, on March 5, 1979. The CAB noted in its order of April 19, 1979, which affirmed the approval of United's Special Tariff Permission application, that "[a]ll carriers are obligated to conduct their operations in accordance with their tariff."

On March 14, 1980 the CAB adopted an Order on Reconsideration in which it tentatively concluded that its prior decision was incorrect. The reconsideration was triggered by the CAB's "general policy against permitting charter contracts to be altered by superseding tariff filings and [its] determination to abolish charter tariffs." It found that United had not met the requirements of 14 C.F.R. § 221.190 and therefore the grant of Special Tariff Permission was improper. In its final order of March 28, 1980 it found that the grant of the Special .

---

**1.** The fifth and sixth causes of action arise from defendant's refusal to allow some of plaintiff's customers to board a flight claiming that payment for the seats had not been remitted. The seventh and eighth causes of action are based on defendant's rescheduling of a flight to Rochester, New York to a time when it was impossible for plaintiff's customers to be available for boarding. The ninth and tenth causes of action allege that defendant's employees conspired to injure plaintiff's business reputation and to destroy its business as a charter tour operator.

**2.** 49 U.S.C. § 1482(g) permits the CAB to review the lawfulness of a tariff or other regulation and to suspend the operation of such tariff upon notice to the carrier at least fifteen days before the tariff would otherwise go into effect.

Tariff Permission was inconsistent with CAB procedures because no finding of "actual emergency or real merit was made." The order specifically noted that neither the original grant of the petition nor the subsequent disavowal rested on the presence or absence of good faith on the part of United in filing the petition. The CAB termed its administrative error "regrettable."

This court has taken cognizance of the general rule that a valid tariff controls the underlying contract between a carrier and a charterer. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978); *Tishman & Lipp, Inc. v. Delta Air Lines*, 413 F.2d 1401, 1403 (2d Cir.1969); *see also Emery Air Freight Corp. v. United States*, 499 F.2d 1255, 1259, 205 Ct.Cl. 49 (1974); *Slick Airways, Inc. v. United States*, 292 F.2d 515, 519, 154 Ct.Cl. 417 (1961).

ILTA contends that a contract is not modified by a tariff which is invalidated. Therefore, ILTA argues, United's insistence on payment eleven days before flight departures, instead of seven days as provided in the contract, constitutes a breach of that contract.

A review of the CAB orders in this case sheds some light on the CAB's stand on the validity of United's tariff. Although the CAB declined to evaluate the effect of its disavowal of the tariff on the contractual obligations of the parties and refused to declare the tariff null and void *ab initio* as requested by ILTA, it did comment on the validity of the disaffirmed tariff.

In its initial order, which affirmed the action of its staff in approving the Special Tariff Permission application, the CAB found that the circumstances supported the grant of the petition. It agreed that United was justified in requesting that charter flights be paid for eleven days in advance. Otherwise, under CAB regulation 14 C.F.R. § 380.12, United might be required to operate charter flights for which it had not been paid. The CAB further viewed the tariff as ultimately protecting the consumer against last minute cancellations of charter flights. In light of the CAB's program to improve consumer protection, it exercised its authority under 14 C.F.R. § 221.-190 and granted the tariff amendment on less than statutory notice.

There can be no doubt that pursuant to its own regulations the CAB is empowered to grant tariff changes on short notice. The CAB staff evaluated the predicament faced by United and determined that it was in the public interest to grant the requested tariff amendment. In its Order on Reconsideration, dated March 14, 1980, the CAB raised its "general policy against permitting charter contracts to be altered by superseding tariff fiings and [its] determination to abolish charter tariffs." [3] It recognized that through the superseding tariff filing device a carrier could unilaterally revise the terms of its outstanding charter contracts but it did not find that the procedure itself was invalid. As long as the CAB was authorized to grant Special Tariff Permission applications, the tariffs granted were applications, the tariffs granted were valid and binding even though burdensome on the charty party to the contract.

The courts have recognized that the valid tariffs of a federal agency "remain effective until suspended or changed in accordance with specified procedures." *T.I.M.E., Inc. v. United States*, 359 U.S. 464, 465, 79 S.Ct. 904, 905, 3 L.Ed.2d 952 (1959); *Lichten v. Eastern Airlines, Inc.*, 189 F.2d 939, 941 (2d Cir.1951) ("[T]he provisions of a tariff properly filed with the Board and within its authority are deemed valid until rejected by it.") *Cf. Leighton v. Paramount Pictures Corp.*, 340 F.2d 859, 861 (2d Cir.) *cert. denied*, 381 U.S. 925, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965) ("[A] court order must be obeyed even assuming its invalidity, until it is properly set aside.")

The wisdom of this policy is clear. Parties governed by agency regulations must be able to ascertain which regulations control their conduct, rights and obligations. A regulation or tariff filed with an agency

---

3. As of September 6, 1979 all charter tariffs then in existence were terminated by the CAB.

serves as notice to interested parties of the standards or procedures with which they must comply. The possibility that a governing regulation or rule might later be invalidated cannot be a defense to noncompliance. This would unduly burden those parties who have regulated their actions in accordance with the rules then in effect.

Paragraph III A of the Conditions of Contract for the charter contract in this case provide: "Tariffs (including future modifications thereof) of United are hereby incorporated herein by reference and shall govern the rights and liabilities of the parties hereto with respect to the charter flight(s) regardless of the provisions of this Charter Agreement...." The parties were aware of their obligations to comply with existing tariffs and with any future tariff amendments. Their obligation to comply superseded their negotiated terms. All tariffs were incorporated into the contract, not only those to which both parties consented. The CAB regulations in effect at the time permitted a carrier to apply for Special Tariff Permission on less than statutory notice. The statute permitted ILTA to challenge the tariff but in the interim both the contract and administrative policy required it to comply with the tariff as amended.

Neither the CAB nor the district court found that United's application for Special Tariff Permission was made in bad faith. The fact that the grant of the petition was subsequently disavowed and the entire scheme of charter tariffs was terminated by the CAB did not affect United's obligation to comply with the tariff while it was in effect.[4] The CAB's "regrettable" administrative error cannot be invoked to thrust a complying party into breach of its contract with the charter operator, a contract that specifically provided for tariff modification. United properly exercised its right to apply the security to the extent of the damages suffered by reason of ILTA's refusal to pay in accordance with the amended tariff.

The judgment of the district court is affirmed.

4. Upon the CAB's invalidation of the tariff change, ILTA may have become entitled to recover the extra financial burden the tariff change had imposed on it. *See Moss v. C.A.B.*, 521 F.2d 298, 306–07 (D.C.Cir.1975). In this case, that burden was only the loss of use of ILTA's payments to United for the four days by which payments were accelerated. United's liability for this nominal damage is not alleged in this litigation; the sole issue on the merits is whether United's insistence on compliance with the amended tariff, while it was in effect, constituted a breach of contract.