**B.R.I. COVERAGE CORP., As Agent for Certain Underwriters at Lloyds, London, U.K., Plaintiff,**

v.

**AIR CANADA, Defendant.**

No. 86 CV 282.

United States District Court, E.D. New York.

Nov. 9, 1989.

134

Marcigliano & Campise, New York City (Scott T. Johnson, of counsel), for plaintiff.

Bigham Englar Jones & Houston, New York City (Catherine H. Agnew, of counsel), for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant moves pursuant to (i) Fed.R. Civ.P. 56(b) for summary judgment or, in the alternative, for partial summary judgment on the issue of damages, (ii) Fed.R. Civ.P. 17(a) for dismissal of the complaint because plaintiff is not the real party in interest, and (iii) Fed.R.Civ.P. 12(b)(6) for dismissal of the complaint for failure to allege a jurisdictional basis. Plaintiff cross-moves pursuant to Fed.R.Civ.P. 56(a) for partial summary judgment on the issue of liability and pursuant to Fed.R.Civ.P. 12(f) to strike defendant's eleventh affirmative defense. For the reasons discussed below, defendant's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(b) is granted and plaintiff's cross-motions are denied.

### FACTS

Plaintiff B.R.I. Coverage Corp. ("BRI") is a New York corporation with its principal place of business in New York. The Amended Complaint alleges that defendant Air Canada is a foreign corporation existing by charter as a subsidiary of the government of Canada. Victor Goodman, Limited ("Victor Goodman") is a wholesale furrier located in Toronto, Canada. Plaintiff is the "settling agent" for certain Lloyds underwriters that insured Victor Goodman.

On February 26, 1985, Victor Goodman purchased 11,023 fur skins at a New York auction conducted by Elbeco Marketing Company ("Elbeco"). Victor Goodman instructed Elbeco to ship the furs from New York to Reliable Fur Dressers, Inc. ("Reliable") in Toronto, Canada. Elbeco packed the furs into 16 cartons and delivered the cartons to Air Canada for shipment.

Air Canada accepted the cartons for shipment and issued Air Canada Air Waybill No. 014–6015–2422 dated February 28, 1985. The waybill provided for shipment of 16 cartons of "raw skins" with a gross weight of 2490 pounds. The declared value for carriage was $201. Air Canada arranged to have the goods carried overnight by truck to the Lester Pearson International Airport in Toronto.

On March 4, Reliable's trucking company attempted to take delivery of the entire shipment, but Air Canada could not locate four of the sixteen cartons. The twelve available cartons were delivered to Reliable. Victor Goodman subsequently telephoned Air Canada representative James Miller and confirmed that Air Canada could not produce four cartons of the shipment. By letter dated March 15, 1985, Victor Goodman notified defendant that it would be held responsible for the missing cartons.

In May 1985 the cartons were found in a third-party's warehouse. The cartons were promptly retrieved by Air Canada and placed at Victor Goodman's disposal. Victor Goodman's inspection of the cartons revealed large water marks on the carton exteriors and severe damage to the furs.

On October 4, 1985, plaintiff paid Victor Goodman $56,470.32 Canadian dollars on behalf of the Lloyds underwriters that in-

sured Victor Goodman. Plaintiff subsequently brought this diversity action as Victor Goodman's subrogee.[1] The Amended Complaint demands $56,470.32.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "after adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant bears the initial responsibility of setting forth the basis for its motion and identifying any portions of the record which demonstrate the absence of a genuine issue of fact. *Id.* at 323, 106 S.Ct. at 2552. The non-movant, however, " 'may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). If the non-movant "fails to substantiate the existence of a genuine dispute, a proper concern for judicial efficiency and the mandate of Rule 56(c) require summary disposition of the issue." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983).

### II. APPLICABILITY OF THE WARSAW CONVENTION

The so-called Warsaw Convention (hereinafter also the "Convention") applies to "all international transportation of ... goods performed by aircraft for hire." Warsaw Convention, *opened for signature* October 12, 1929, art. 1(1), reprinted at note following 49 U.S.C.App. § 1502. The parties agree that the Convention applies to this case, but disagree as to why. Plaintiff argues that the Warsaw Convention applies as a matter of law because the parties contracted for the international shipment of goods by air. Defendant asserts that the Convention's terms are incorporated into the contract of carriage by the air waybill.

The parties do not dispute that shipment was performed by truck. The Convention applies only to transport "performed by aircraft for hire." Warsaw Convention, *supra*, art. 1(1). It is clear, therefore, that the Convention does not apply simply by operation of law.

Contracting parties may, however, adopt the Convention's terms by reference. *See Blaw–Knox Constr. Equip. Co. v. The Royal Jordanian Airlines*, No. 87 Civ. 7866, 1988 WL 53190 (N.D.Ill. May 12, 1988). The air waybill provides that "[c]arriage hereunder is subject to the rules relating to liability established by the Warsaw Convention ..." Miller Affidavit, exh. A. Subject to defendant's valid tariffs, terms set forth in the air waybill govern the contract of carriage. *I.L.T.A., Inc. v. United Airlines, Inc.*, 739 F.2d 82, 86 (2d Cir.1984). The Convention applies as a matter of contract because the air waybill incorporates the Warsaw Convention by reference.

### III. BRI AS A PROPER PLAINTIFF

Defendant contends that BRI is not a proper plaintiff because (i) plaintiff lacks

---

**1.** Although plaintiff's Complaint did not initially allege a jurisdictional basis, a legal memorandum submitted by plaintiff asserted that this case "obvious[ly]" involves a federal question. Because federal question jurisdiction was not obvious to this court, plaintiff was granted leave to file an amended complaint and the parties were ordered to submit legal memoranda addressing the subject-matter jurisdiction issue.

The parties never submitted the memoranda as ordered. In April 1988, plaintiff filed its Amended Complaint, alleging that BRI is a New York Corporation and that this court has diversity jurisdiction. Unfortunately, in support of its allegations plaintiff cited 28 U.S.C. § 1331, which grants this court jurisdiction over matters involving a federal question. Over one year later this error was corrected by stipulation of the parties.

This tortured history remains germane because defendant moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to allege a jurisdictional basis. Although proper pleadings have not come easily in this case, I am satisfied that the Amended Complaint, as supplemented by stipulation, sufficiently alleges a jurisdictional basis. Therefore, defendant's motion to dismiss is denied.

standing under the Warsaw Convention; (ii) plaintiff is not the real party in interest and (iii) plaintiff sues pursuant to a champertous agreement in violation of New York public policy. I reject all these arguments.

### (a) *Standing Under the Warsaw Convention*

Plaintiff's claim is subject to the conditions and limits set out in the Convention. Warsaw Convention, *supra*, art. 24(1). Convention articles 12 and 13 set forth various rights of consignors and consignees. Articles 14 and 15 of the Convention govern standing. Article 14 provides that:

> [t]he consignor and the consignee can respectively enforce all the rights given them ... each in his own name, whether he is acting in his own interest or in the interest of another ...

Article 15 provides that:

> [a]rticles 12, 13, and 14 shall not affect either the relations of the consignor and the consignee with each other or the relations of third parties whose rights are derived either from the consignor or from the consignee.

Defendant contends that articles 12, 13, and 14 permit only the consignor or consignee named on the air waybill to sue for loss of or damage to goods. In *Johnson v. American Airlines, Inc.*, 834 F.2d 721 (9th Cir.1987), the Ninth Circuit adopted this view on the narrow facts before it, but reserved judgment on whether a principal has standing when its agent is the consignor or consignee. *Id.* at 725.

■ The Convention generally limits the right to bring an action to the consignor or consignee named on the waybill to insure that "the carrier will know with whom it is dealing and will not be subjected to double liability." *Leon Bernstein Commercial Corp. v. Pan Am. World Airways*, 72 A.D.2d 707, 708, 421 N.Y.S.2d 587, 589 (1st Dep't 1979). In *Bernstein*, however, the New York Appellate Division concluded that the undisclosed principal of an agent consignor had standing under the Convention because:

> If it can be established upon the trial that plaintiff is indeed the undisclosed principal of the consignor named in the air waybill, and had title to the goods at the time of the loss, defendant will not be making any liability payment to the wrong party nor will plaintiff be unjustly enriched by any award of damages. Plaintiff's rights are "derived ... from the consignor ..."

*Id.* at 708, 421 N.Y.S.2d at 589 (citing Warsaw Convention art. 15).

In the instant case it is undisputed that Victor Goodman is the undisclosed principal of both Elbeco, the consignor, and Reliable, the consignee. Victor Goodman has standing as principal because its rights are "derived either from the consignor or the consignee." Warsaw Convention, *supra*, art. 15; *Bernstein* 72 A.D.2d at 708, 421 N.Y.S.2d at 589. Plaintiff has been subrogated to the rights of Victor Goodman. Goodman Affidavit, exh. C. Therefore, I conclude that plaintiff has standing as successor-in-interest to Victor Goodman.

### (b) *Real Party in Interest*

■ As stated previously, plaintiff made payment to Victor Goodman as "settling agent" on behalf of the Lloyds underwriters which insured Victor Goodman. Defendant maintains that this action must be dismissed because the underwriters, not BRI, are the real parties in interest. While Fed.R.Civ.P. 17(a) requires that every action be prosecuted in the name of the real party in interest, it also provides that:

> [n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest; and such ratification ... shall have the same effect as if the action had been commenced in the name of the real party in interest.

The underwriters have ratified commencement and maintenance of this action by plaintiff and have agreed to be bound by any judgment as to liability or damages. Although plaintiff failed to file its rat-

ification until almost one year after defendant raised its real party in interest objection, I cannot find that defendant has been prejudiced by the delay. Therefore, I accept plaintiff's ratification and conclude that plaintiff has satisfied the requirements of Rule 17(a).

## IV. CHAMPERTY

██ Defendant contends that maintenance of this action violates the New York statutory prohibitions against champerty.[2] Sections 489 and 495 of the New York Judiciary Law provide that: "no corporation ... shall take an assignment [of a claim] for the purpose of representing any person in the pursuit of any civil remedy." N.Y.Jud.Law §§ 489, 495 (McKinney 1982).

In the instant case the underwriters have reserved their "right to the proceeds of any recovery obtained by plaintiff ... less plaintiff's percentage of recovery for the commencement and maintenance of suit." Trott Ratification at 2. Defendant correctly argues that the prohibitions of sections 489 and 495 apply when a party " 'sues on behalf of [another] and remits all sums received, less an amount for his services' ..." Defendant's Reply Memorandum at 3 (quoting *American Optical Co. v. Curtiss,* 56 F.R.D. 26, 31 (S.D.N.Y.1971).

Defendant, however, overlooks the permissive language of sections 489 and 495 which provides that "[n]othing herein contained shall affect any assignment ... taken by any moneyed corporation authorized to do business in the state of New York ..." N.Y.Jud.Law §§ 489, 495 (McKinney 1982); *see Flushing Sav. Bank v. R.G.R. Assoc.,* 76 A.D.2d 893, 894, 429 N.Y.S.2d 36, 37 (2d Dep't), *appeal denied,* 51 N.Y.2d 909, 434 N.Y.S.2d 922, 415 N.E.2d 980 (1980). A moneyed corporation is "a corporation to which ... the insurance law is made applicable by the provisions of such laws." N.Y.Gen.Constr.Law § 66(9) (McKinney Supp.1989).

Plaintiff's affidavit states that plaintiff is an insurance broker authorized to do business in New York subject to New York's insurance laws. Plaintiff was assigned Victor Goodman's claim by subrogation agreement. Thus plaintiff is a "moneyed corporation" exempt from the prohibitions of sections 489 and 495 of the New York Judiciary Law. Accordingly, I conclude that maintenance of the instant action by plaintiff does not violate the laws or policy of the state of New York.

## V. TIMELY NOTICE OF CLAIM

██ Defendant claims that it is entitled to summary judgment because Victor Goodman did not provide a timely written notice of claim as required by article 26 of the Warsaw Convention. Article 26 provides, in pertinent part, that:

> [i]n case of damage, the person entitled to delivery must complain to the carrier forthwith after discovery of the damage, and at the latest within ... 7 days from the date of receipt in the case of goods. In case of delay the complaint must be made at the latest within 14 days from the date on which the ... goods have been placed at his disposal.

Warsaw Convention, *supra,* art. 26(2).

On March 15, 1985, eleven days after Air Canada's partial failure to deliver the furs, Victor Goodman mailed defendant written notice that the shipment "did not arrive in tact [sic]" and that defendant would be held responsible for the missing goods. Goodman Affidavit, exh. B. Defendant claims that the March 15 letter is insufficient notice because it was mailed prior to delivery of the damaged goods.

Although dicta in *Brentwood Fabrics Corp. v. KLM Royal Dutch Airlines,* 13 Av.L.Rep. (CCH) 17,426 (N.Y.Civ.Ct.1970), suggest that notice may be given only after actual discovery of physical damage to goods, that case is not dispositive. When interpreting the Warsaw Convention, a court should "begin with an inquiry into

---

**2.** Maintenance is the "intermeddling in a suit of a stranger or of one not having any privity or concern in the subject matter." 18 N.Y.Jur.2d 127, *Champerty and Maintenance* § 1 (1981). Champerty is a form of maintenance involving

"unlawful maintenance of a suit in consideration of a bargain for some part of the thing involved." *Coopers & Lybrand v. Levitt,* 52 A.D.2d 493, 497, 384 N.Y.S.2d 804, 807 (1st Dep't 1976).

the purpose of the provision that requires interpreting." *Eck v. United Arab Airlines, Inc.*, 360 F.2d 804, 812 (2d Cir.1966); *see, e.g., Reed v. Wiser*, 555 F.2d 1079, 1088 (2d Cir.), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 36–37 (2d Cir.1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). The Convention's notice requirements are intended to insure that carriers are informed when they may be held liable for reimbursement and are provided an opportunity to investigate claims. *Denby v. Seaboard World Airlines, Inc.*, 737 F.2d 172, 184 (2d Cir.1984). Notice need not be in any particular form so long as it provides the carrier reasonable notice. *Id.* at 184–85.

In the instant case, defendant opened a claim file to facilitate investigation of Victor Goodman's claim. After defendant delivered the missing furs in May 1985, an adjuster examined the furs on behalf of Air Canada. Clearly defendant had an opportunity to investigate plaintiff's claim. The March 15 letter also clearly states that defendant will be held responsible for the missing furs. Because defendant had an opportunity to investigate Victor Goodman's claim and was informed that it would be held responsible for the missing furs, I conclude that the March 15 letter provided sufficient written notice of claim.

## VI. LIMITATION OF LIABILITY

■ Plaintiff asserts that defendant may not avail itself of liability limitations in the Convention or defendant's tariffs because shipment of the furs by truck rather than by air was either wilful misconduct or a material breach of contract. While the air waybill contemplates shipment by air, the contract of carriage is controlled by the carrier's valid tariffs. *I.L.T.A., Inc., v. United Airlines, Inc.*, 739 F.2d 82 (2d Cir. 1984); *North Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978).

Air Canada's tariff rule G42(B)(2) provides that "[w]hen the carrier determines that it is necessary to expedite delivery,

carrier will deviate from any route shown on the Airbill or forward [the goods] via any ... other transportation." Because transportation by truck was permitted by defendant's tariff, defendant's deviation from transport by air is neither misconduct nor a breach of contract. Plaintiff's motion to strike defendant's eleventh affirmative defense (asserting limitations of liability) is, therefore, denied.

### (a) *Warsaw Convention Liability Limitations*

■ Warsaw Convention article 22 clause (2) limits carrier liability in the transport of goods to 250 French francs per kilogram of goods. Defendant asserts, and plaintiff does not dispute, that this limitation has a value of "USD 20.00/CAD 20.00 or 9.07 per pound." Defendant's Memorandum at 17–18. Defendant argues that its liability is further limited to $201, the declared value of the shipment listed on the air waybill.

Defendant relies on Warsaw Convention article 22 clause (2) which provides that:

the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made ... a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case *the carrier will be liable to pay a sum not exceeding the declared sum* ... (emphasis added)

Essentially, defendant contends Victor Goodman "specially declared" a lower value for its shipment, which in turn lowered the liability limitation already provided in Article 22.

While the Convention does provide that the carrier will not be liable for a sum "exceeding the declared sum," the Convention must not be read literally when a liberal reading is necessary to further its purposes. *Benjamins v. British European Airways*, 572 F.2d 913, 918 (2d Cir. 1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). An Article 22 "special declaration" is intended to alert the carrier "of the risk it assumes in providing carriage for a valuable shipment and

to allow it to take the necessary steps to minimize that risk." *Orlove v. Phillipine Airlines, Inc.,* 257 F.2d 384, 387–88 (2d Cir.), *cert. denied,* 358 U.S. 909, 79 S.Ct. 230, 3 L.Ed.2d 230 (1958). Thus, I interpret "special declaration" to mean a declaration of value greater than the liability limitation of 250 francs per kilogram set forth in Article 22.

This conclusion is further supported by defendant's tariff rule G52(a)(3)(d) which provides that a shipment "shall have a declared value of ... USD20.00/CAD20.00 per kilogram unless a *higher* value is declared on the waybill." (emphasis added). Therefore, I conclude that defendant's liability is not limited "to a sum not exceeding" the declared value of $201. I also conclude that, because the Convention applies, defendant's liability is limited to $9.07 per pound.

#### (b) *Application of the $9.07 Limitation*

■ The parties disagree as to how the $9.07 per pound figure should be applied when only a portion of a shipment of goods is damaged. Defendant argues that its maximum liability is $9.07 multiplied by the weight of the damaged goods. Plaintiff contends that Article 22 sets a liability ceiling equal to 9.07 multiplied by the gross weight of the shipment.

When, as in the instant case, only a portion of a shipment of goods is damaged, and the remainder of the shipment is suitable for its intended use, recovery is based on the weight of goods actually damaged. *Hartford Ins. Co. v. Trans World Airlines, Inc.,* 671 F.Supp. 693, 694 (C.D.Cal. 1987). Recovery based on a shipment's gross weight is permitted only when damage to a portion of a shipment affects the value of the entire shipment. *See Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft,* 621 F.Supp. 721, 722 (N.D.Ill.1985), *aff'd in part and vacated in part on other grounds,* 855 F.2d 385 (7th Cir.1988).

Plaintiff does not suggest that damage to four cartons of furs affected the value of the 12 cartons delivered on time. Therefore, defendant's liability is limited to $9.07 multiplied by the weight of goods actually

damaged. This conclusion is also required by the air waybill, which provides that:

> in the case of damage or delay of a shipment or part thereof, the weight to be used in determining the carrier's limit of liability shall be the weight which is used (or a pro-rata share in the case of a part shipment loss, damage or delay) to determine the transportation charge for such shipment.

Miller Affidavit, exh. A.

Finally, plaintiff does not contest defendant's assertion that each carton of damaged furs weighed 155.63 pounds, yielding 422.52 pounds of damaged goods. I raise this issue *sua sponte* because defendant's multiplication is incorrect, 155.63 multiplied by four equals 622.52. Multiplication of 622.52 by $9.07 yields a product of $5,646.26, the amount to which defendant would limit its liability. Thus, even though defendant miscalculated the total weight of damaged goods, it correctly calculated its liability under the Convention. Accordingly, defendant's motion to limit its liability to $5,646.26 is granted.

### VII. PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

■ Plaintiff cross-moves for partial summary judgment on the issue of liability. To establish a prima facie case, plaintiff must demonstrate that the goods were delivered to defendant in good condition. *M. Golodetz Export Corp. v. S/S Lake Anja,* 751 F.2d 1103, 1109 (2d Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985); *Gordon H. Mooney, Ltd., v. Farrell Lines, Inc.,* 616 F.2d 619, 625 (2d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). Plaintiff argues that the absence of an exception for condition on the air waybill is sufficient evidence that the goods were delivered in good condition.

The air waybill states that the goods are in "apparent good order and condition ..." When a shipper packs goods for shipment and the packing is sealed, "apparent good order and condition" means only that the goods were properly packed for shipment.

*Caemint Food Inc. v. Brasileiro,* 647 F.2d 347, 352–53 (2d Cir.1981); *Philipp Bros. v. MV "Sabogal",* 490 F.Supp. 975, 981 (S.D. N.Y.1980). On the other hand, if the cartons were not sealed and defendant had an opportunity to view the furs, the air waybill is evidence that the furs were delivered without damage. *Madow Co. v. S.S. Liberty Exporter,* 569 F.2d 1183, 1185 (2d Cir. 1978).

Because I cannot determine whether the cartons packed by Elbeco were sealed, I cannot accept the air waybill as *prima facie* evidence that the furs were delivered to defendant in good condition. Whether the furs were delivered in good condition is a question of material fact. Accordingly, plaintiff's cross-motion for partial summary judgment is denied.

SO ORDERED.