ARKWRIGHT–BOSTON MANU-
FACTURER'S MUTUAL IN-
SURANCE COMPANY

v.

INTERTRANS AIRFREIGHT CORP.

v.

BRITISH CALEDONIAN AIRWAYS.

Civ. A. No. 87–0241–H.

United States District Court,
D. Massachusetts.

Nov. 6, 1991.

Paul D. McCarthy, Looney & Grossman, Boston, Mass., for plaintiff.

Allan E. Taylor, Taylor, Anderson & Travers, Boston, Mass., for defendant.

Wayne C. Kerchner, Boston, Mass., for third-party defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER NON-JURY TRIAL OF CLAIMS BETWEEN ARKWRIGHT–BOSTON MUTUAL INSURANCE COMPANY AND INTERTRANS AIRFREIGHT CORP.

ROBERT B. COLLINGS, United States Magistrate Judge.

### Introduction

On November 24, 1986, the plaintiff, Arkwright–Boston Manufacturer's Mutual Insurance Co. (hereinafter, "Arkwright"), filed a Complaint in the Suffolk Superior Court against the defendant, Intertrans Airfreight Corp. (hereinafter, "Intertrans"). The Complaint alleged that Arkwright was the insurer of AVX Corporation (hereinafter, "AVX") and that Intertrans, on December 2, 1985, "... received a shipment of AVX's goods in good order and condition in New York, New York and agreed to deliver them ..." to Coleraine, Northern Ireland. The Complaint further alleges that the goods were received in Northern Ireland on December 11, 1985 in a damaged condition and that the damage was due solely to Intertrans' negligence in handling the goods while in their custody. Arkwright seeks $45,266.56 plus interests and costs from Intertrans. Intertrans removed the case to this Court on January 29, 1987.

On December 1, 1987, Intertrans filed a third-party complaint seeking contribution against British Caledonian Airways, Ltd. (hereinafter "BCA") alleging that when Intertrans received the goods from AVX in New York, it contracted with BCA to ship the goods to London. Intertrans, denying liability to Arkwright, alleges that if the goods were damaged in transit between New York and London, the damage was due to BCA's negligence.

After completion of discovery and Rule 16(b) proceedings, Arkwright and Intertrans agreed to waive a jury and consented to have the case tried before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). BCA consented only that the undersigned could try the claims between Arkwright and Intertrans;

it did not consent to trial of Intertrans' claims against it before the undersigned.

On April 5, 1988, the District Judge to whom this case is assigned referred the case for the trial of Arkwright's claims against Intertrans pursuant to the parties' consent.

Trial was held on May 29, 1988. Posttrial submissions and a copy of the transcript having been received, the matter is ripe for decision.

There is no dispute that the goods in question, i.e. a sputter machine weighing over a ton, left AVX's facility in South Carolina undamaged and crated and that, when the crate was opened in Coleraine, Northern Ireland, the machine was damaged. There is no direct evidence as to where the damage occurred. In these circumstances, the first legal issue the Court must decide is what the burden of proof is in the case and which party has the burden.

Before turning to the this first issue, I find the following facts pursuant to the parties' stipulations (# # 34 & 37) and other evidence by which the facts were proved by a preponderance of the evidence:

*Findings of Fact*

1. Plaintiff Arkwright Mutual Insurance Co. ("Arkwright") is an insurance company with a usual place of business at 225 Wyman Street, Waltham, Massachusetts.

2. Arkwright issued a policy of insurance to AVX Corporation ("AVX") pursuant to which Arkwright paid AVX for a claim of damage to a MRC Sputter Machine as further described below. Upon settlement of the loss, Arkwright was assigned AVX's rights to bring an action for recovery of the loss.

3. Defendant Intertrans Airfreight Corporation ("Intertrans") is a corporation doing business in Massachusetts with a usual place of business in the state.

4. In early November, 1985, AVX in Myrtle Beach, South Carolina, completed various work rebuilding and cleaning a used 1982 MRC Sputter Machine and agreed to sell the machine and several other items to the AVX plant in Coleraine, Northern Ireland, pursuant to invoice number 221207.

5. A sputter machine is a device used in the construction of electronic devices. It is a computer which is microprocessor controlled and has a number of printed circuit boards within the machine. It also contains a vacuum chamber and cryogenic pump and control panel.

6. In late November, 1985, AVX in Myrtle Beach packed and crated the sputter machine for shipment to AVX in Coleraine, Ireland.

7. The sputter machine was packed by AVX in a crate that was constructed of a timber frame covered with plywood sheets. The crate measured 91 inches long $\times$ 50 inches wide $\times$ 90 inches high.

8. The machine was anchored inside the crate at four points by heavy duty bolts and 90 heavy duty flanges attached to two $3\frac{1}{2} \times 3\frac{1}{2}$ timber cross members which were attached to the base of the crate.

9. There were no markings, symbols or writings on the outside of the crates to indicate how the crate was to be handled.

10. The entire shipment or consignment consisted of 3 cartons containing various items, 6 pallets of ceramic tape, and five crates, one of which contained the sputter machine. The five crates combined weighed 3,800 pounds. The crate containing the Sputter Machine weighed 2,650 pounds.

11. On November 27, 1985, the shipment was picked up at AVX's warehouse by Old Dominion Trucking. AVX arranged for the transportation of the sputter machine by Old Dominion Trucking from the AVX facility in South Carolina to Intertrans' warehouse in New York. At no time was Intertrans involved in any way in the delivery of the shipment from AVX to Intertrans' warehouse. Specifically, Intertrans did not arrange for, contract with or pay Old Dominion for the services rendered to AVX.

12. The first time when Intertrans was notified by AVX that Intertrans was hired to ship the consignment containing the

sputter machine from New York to Ireland was on December 1, 1985 when Old Dominion Trucking delivered the case containing the sputter machine to Intertrans' warehouse in New York.

13. On December 1, 1985, Intertrans issued House Air Waybill No. 1080255 to AVX in South Carolina. On the Air Waybill in the space provided for "Shipper's Name & Address," Intertrans listed "AVX Corporation, 17th Avenue South, Myrtle Beach, South Carolina 23208 Attn: Darey Del Cordo." No exceptions were taken by Intertrans on the face of the bill of lading.

14. On December 2, 1985, the consignment was transferred to British Caledonian Airways at JFK Airport in New York where it was loaded onto flight 222/2 to London.

15. The consignment arrived at Gatewick Airport in London on Flight 222/2 on December 2, 1985. It remained at Gatewick Airport until it was trucked to Heathrow Airport in London on December 5, 1985.

16. The consignment cleared customs at Heathrow Airport on December 5, 1985 without being opened and was delivered to John Bull Airfreight Ltd. of London by British Caledonian Airways.

17. On December 6, 1985, the consignment was loaded by Mixed Freight Air Transport which transported the consignment by truck to the Ireland Freight Services Consolidation Area, Colbrooke, England, which is located three or four miles from Heathrow Airport.

18. On December 6, 1985, the consignment was trucked and ferried on the daily run to Ireland and arrived at International Freight Services, Mukariore Depot, Ireland that same day.

19. The consignment remained at International Freight Services until December 11, 1985, when it was delivered to AVX Corporation in Coleraine, Northern Ireland.

20. Clean receipts were given at each stage in the transit of the shipment.

21. When the consignment arrived at AVX in Coleraine, the crate containing the sputter machine appeared sound with the exception of a small hole measuring 60mm × 120mm in the upper front panel.

22. Damage was discovered only when the crate was opened by AVX on December 12, 1985. Upon opening the crate, it was discovered that the handle to the cryogenic pump was embedded in a plywood panel on one side of the crate. The handle did not penetrate through the plywood sheet.

23. The machine was damaged and a number of parts were needed for repair. The main damage was to the Vacuum Loadlock Dome and Pump and the Display Console of the machine.

24. On December 16, 1985, telexes were sent by F. Moffatt at AVX Coleraine to Ireland Freight Services and to Intertrans Corporation advising that the crate was in good condition but that the machine was damaged. F. Moffatt noted that a claim would be made at a later date once the details were collected on the shipment.

25. On December 16, 1985, Alan Pearson of Intertrans sent a notice of possible loss to British Caledonian Airways Ltd. based on the telex received from AVX Coleraine.

### Conclusions of Law

■ There is no dispute that the provisions of the Warsaw Convention, 49 U.S.C.App. § 1502 note govern the rights and liabilities of the parties in this action. By its terms, the Warsaw Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." Article 1(1). As defined in the Convention:

"international transportation" shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated within the territories of two High Contracting Parties ...

Article 1(2).

The shipment of the sputter machine from the United States to Ireland, both countries being High Contracting Parties, clearly falls within the meaning of international

transportation under the Warsaw Convention. *See Jaycees Patou, Inc. v. Pier Air International, Ltd.*, 714 F.Supp. 81, 82 (S.D.N.Y.1989); *Data General Corp. v. Air Express International Co.*, 676 F.Supp. 538, 539 (S.D.N.Y.1988). Moreover, apart from the operation of law, the contract between the parties itself declares the applicability of the Convention. Joint Exh. 1, Intertrans Air Waybill No. 1080255.

In order to make out a prima facie case with respect to Intertrans' liability for the damaged sputter machine, Arkwright

... must by a preponderance of the evidence evince proof that the goods 1) were delivered to the carrier in good condition, 2) arrived in damaged condition, and 3) resulted in the specified amount of damage.

*Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1014 (11 Cir.1987); *see also B.R.I. Coverage Corp. v. Air Canada*, 725 F.Supp. 133, 139 (E.D.N.Y.1989); *Boehringer Mannheim Diagnostics v. Pan American World Airways, Inc.*, 531 F.Supp. 344, 347 (S.D.Tex.1981), *rev. on other grounds*, 737 F.2d 456 (5 Cir.1984). To meet the first prong of the test, Arkwright relies upon the air waybill issued by Intertrans coupled with the presumption created by Article 11 of the Convention.

■ Subsection 2 of Article 11 provides:

(2) The statements in the air waybill relating to the weight, dimensions, and packing of the goods, as well as those relating to the number of packages, shall be prima facie evidence of the facts stated; those relating to the quantity, volume, and condition of the goods shall not constitute evidence against the carrier except so far as they both have been, and are stated in the air waybill to have been checked by him in the presence of the consignor, or relate to the apparent condition of the goods.

Arkwright argues that the issuance of the air waybill without exceptions raises the Article 11 presumption in its favor that the sputter machine was delivered to Intertrans in apparent good order and condition. Citing the case of *Philipp Brothers v. M/V "Sabogal"*, 490 F.Supp. 975 (S.D.N.Y.1980),

Arkwright contends that this evidence is sufficient to prove the condition of the goods upon receipt by the carrier.

■ Certainly it is true that "[a] clean bill of lading is ordinarily *prima facie* evidence of delivery in good condition." *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2 Cir.1981); *Philipp Brothers v. M/V "Sabogal", supra*, 490 F.Supp. at 981. However, as the "Sabogal" court recognized:

Where, as in the case at bar, bagged goods are involved, "[t]he recitals of 'apparent good order and condition' in the bills of lading furnished only *prima facie* proof of the external condition of the bags."

*Philipp Brothers v. M/V "Sabogal", supra*, 490 F.Supp. at 981 (citation omitted); *Caemint Food, Inc. v. Brasileiro, supra*, 647 F.2d at 352–353.

This principle is applicable to claims made under the Warsaw Convention. *B.R.I. Coverage Corp. v. Air Canada, supra*, 725 F.Supp. at 139. In other words where, as here, the shipper seeks to recover for damages to goods shipped in packaging that effectively prevents the carrier from observing the condition of the contents at the time of delivery, the clean bill of lading or air waybill without exceptions is probative only with respect to external condition of the package, not the "good condition" of the cargo. *D.P. Apparel Corporation v. Roadway Express, Inc.*, 736 F.2d 1, 4 (1 Cir.1984). When the condition of goods are not visible or otherwise revealed by external appearances, "recitals of apparent good order and condition in a bill of lading do not inevitably satisfy the shipper's burden of showing that the damaged goods were in fact in such condition when shipped." *Caemint Food, Inc. v. Brasileiro, supra*, 647 F.2d at 353 (citations omitted). Indeed, the First Circuit has held "where the contents of the shipment are not visible or open for inspection, additional direct and affirmative proof is necessary to show that the [goods were] in good condition when delivered ..." *D.P. Apparel Corporation v. Roadway Express, Inc., supra*, 736 F.2d at 4.

■ As previously noted, the parties do not contest the fact that when the sputter machine left the AVX facility in South Carolina it was undamaged and crated. Arkwright has proffered no further evidence demonstrating the machine's good condition at any other time. In these circumstances, the pivotal question becomes the point at which the sputter machine was delivered to Intertrans. Based upon recitations in the waybill, Arkwright contends that delivery was effected in Myrtle Beach, South Carolina. Intertrans argues that it accepted delivery of the sputter machine in New York.

The air waybill issued by Intertrans lists the shipper to be AVX Corporation of Myrtle Beach, South Carolina. Under Article 11(1) of the Convention, the air waybill constitutes *prima facie* evidence of the conditions of transportation. Arkwright takes the position that as a consequence of this designation, Intertrans in fact took delivery of the sputter machine in South Carolina and that the air waybill covered the shipment from Myrtle Beach to Ireland.

There are several reasons why this argument must fail. First, in its complaint Arkwright specifically alleges that Intertrans "... received a shipment of AVX's goods in good order and condition in New York, New York." Second, even if such an inference or presumption can be said to have arisen from the air waybill, it has plainly and decisively been rebutted by the facts as I have found them. (See, para. 11 and 12, *infra*.) Third, Intertrans did not even issue the air waybill until the transport of the sputter machine from South Carolina to New York had already been completed. It is clear based on all the facts, and I so find as a matter of law, that Intertrans received and accepted delivery of the sputter machine at its warehouse in New York.

In the circumstances of this case, the conclusion with respect to the place of delivery is dispositive. Apart from the air waybill without exceptions, Arkwright has produced no additional evidence to prove that the sputter machine was in good condition upon delivery to Intertrans in New York. Standing alone, the air waybill quite simply is not enough. Unable to carry its burden "to sufficiently establish that the shipment was delivered in good condition", Arkwright has failed to prove an essential element of its claim. *D.P. Apparel Corporation v. Roadway Express, Inc., supra,* 736 F.2d at 5.

■ Arkwright argues that under Article 18 of the Warsaw Convention, any damage is presumed to have resulted from an event that transpired during transportation by air. Article 18, in its entirety provides:

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.

(3) The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.

There are two factual scenarios in which Arkwright would have benefited from the presumption incorporated in Article 18. The first is if the Intertrans air waybill had covered the transportation of the sputter machine from South Carolina to Ireland. In this circumstance, the entire journey, even though a mixed transport, would be considered to be transportation by air and the provisions of the Warsaw Convention would be applicable. *Compare Boehringer Mannheim Diagnostics Inc. v. Pan American World Airways, Inc., supra,*

531 F.Supp. at 347; *Jaycees Patou, Inc. v. Pier Air International Ltd., supra,* 714 F.Supp. at 82–85; Article 31(1).

As previously determined, however, the sputter machine was not "in charge of the carrier" Intertrans from South Carolina to New York. In the second scenario, had Arkwright proven that the damage did not occur during this leg of the journey, i.e., that the sputter machine was delivered in good condition in New York, absent evidence to the contrary, Intertrans would have been presumptively liable for any damage that occurred between New York and the final destination in Ireland. This scenario is distinguishable because Arkwright has failed to carry its burden of proof. In short, on the facts of this case, the presumption that any damage occurred during transportation by air is inapplicable and of no aid to Arkwright in resurrecting its claim.

If Article 18 was applicable, Intertrans would bear the burden of proffering evidence sufficient to overcome the presumption of liability. At this juncture, there is no need to analyze hypothetical situations. Rather, it seems quite clear that this case should be decided based on Arkwright's failure to carry its initial burden of proof.

Judgment shall enter for the defendant on the plaintiff's claims against it. A report and recommendation shall issue that the defendant's third-party complaint be dismissed.